**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Navajo Nation, | CIV-93-2342-PCT-SMM |
| Plaintiff, | **MEMORANDUM OF DECISION AND ORDER** |
| v. | |
| Peabody Coal Company, | |
| Defendant. | |

Before the Court is Plaintiff Navajo Nation's Motion to Voluntarily Dismiss (Dkt. 166), which Defendant Peabody Coal Company[1] ("Peabody") opposes (Dkt. 168). Plaintiff and Intervenor Salt River Project ("SRP") replied to Peabody's opposition (Dkts. 173, 174). Having considered the parties' memoranda and other submissions, the Court now issues this Memorandum of Decision and Order granting in part and denying in part Plaintiff's motion.

**FACTUAL BACKGROUND**

In the 1960s, the Navajo Nation entered into three mineral leases (the "Coal Leases") under the supervision of its trustee, the United States Department of Interior (Dkt. 1, Compl. ¶¶ 4, 5). These leases were later assigned to Peabody (Id.). The 1964 Coal Lease (or the "8580 Lease") permitted the parties to renegotiate its cents-per-ton royalty rate after twenty years (Id. ¶ 4). In 1969, the Navajo Nation conveyed a leasehold interest in reservation land

---

[1] Peabody Western Coal Company is Peabody's successor in interest. For convenience, the Court will simply refer to Peabody.

near Page, Arizona for the Navajo Generating Station ("NGS") (Id. ¶ 6). The NGS is a large, coal fired power plant (Id.). Under the NGS Lease, the Navajo Nation agreed to waive its ability to impose taxes on Peabody to the extent that Peabody's mining related to the delivery of coal to the NGS (Id. ¶ 7).

In 1970, Peabody began operating two mines on the Navajo Reservation and within the former joint-use area of the Navajo and Hopi Reservations (Id. ¶ 8). The Kayenta Mine is dedicated to the NGS (Id.). The Black Mesa Mine was dedicated to the Mohave Generating Station ("MGS") until they both closed in 2005 (Id.).

In 1978, the Navajo Nation enacted a Possessory Interest Tax ("PIT") and Business Activity Tax ("BAT") (Id. ¶ 9). The Navajo Nation could have imposed these taxes on Peabody's extraction of coal for both the NGS and MGS (Id.). Due to the tax waiver under the NGS Lease, though, the Navajo Nation only collected the taxes for coal delivered to the MGS.

Pursuant to the twenty-year renegotiation clause, the Navajo Nation and Peabody amended the Coal Leases in 1987 (the "1987 Lease Amendments"). The 1987 Lease Amendments applied a 12.5% royalty rate to all lease areas and a 20.5% combined royalty tax cap (Id. ¶¶ 11, 12). It also provided a mechanism for Peabody and the Navajo Nation to resolve a long-standing dispute over the Navajo Nation's authority to assess a PIT tax on Peabody's non-tax-exempt mining operations (Id. ¶ 13). The Navajo Nation partially waived its sovereign immunity and its right to require the exhaustion of tribal remedies by permitting Peabody to bring suit in this Court for the expressly limited purpose of challenging the PIT tax (Id.).

Arizona Tax Action

Pursuant to these limited waivers, Peabody and Southern California Edison ("SCE") filed an action in this district, Peabody Coal Company, et al. v. Navajo Tribe, CIV 88-0931 ("Peabody I") (Id. ¶ 22). SCE filed suit in its capacity as operating agent of the MGS (Id.). Peabody and SCE sought a declaration regarding the Navajo Nation's authority to impose

a PIT tax on Peabody's leasehold interests (Id.). Shortly thereafter, the Hopi tribe moved to intervene (Id. ¶ 24). The Hopi Tribe also filed a cross-claim against the Navajo Nation for one-half of all revenues and other economic benefits that the Navajo Nation derived from its imposition or waiver of taxes on former joint use area mining operations (Id.). In a ruling on a motion for summary judgment, the court confirmed the Navajo Nation's right to levy PIT taxes on Peabody (¶¶ 26, 27). The court also required the Navajo Nation to share all "proceeds," including taxes, evenly with the Hopi Tribe for the coal mined from the former joint use area (Id.). However, the court held that the Navajo Nation was not liable to the Hopi Tribe for past waived or abated taxes (Id.).

As a result, the Navajo Nation sought leave to amend its complaint. The Navajo Nation claimed that the Hopi Tribe's right to share in the Navajo Nation taxes upset the nature of its bargained-for exchange with Peabody and constituted a mutual mistake in the 1987 Lease Amendments. When the court denied leave to amend, the Navajo Nation brought this action in 1993.

### Federal Claims and District of Columbia Actions

In 1993, the same year this action began, the Navajo Nation brought an action in the Court of Federal Claims against the United States for breach of its fiduciary duties related to the negotiation of the 1987 Lease Amendments. See Navajo Nation v. United States, CIV 93-0763. During the course of that litigation, the Navajo Nation discovered that Peabody and SCE allegedly induced the United States's breach of its fiduciary duties as trustee. As a result, the Navajo Nation brought suit against Peabody, SRP, and SCE in the United States District Court for the District of Columbia ("D.C. District") (Dkts. 40, 43). Navajo Nation v. Peabody Holding Co., Inc., et al., CIV 99-0469.

///
///
///
///

- 3 -

## PROCEDURAL BACKGROUND[2]

In December 1993, the Navajo Nation filed the complaint in this action (Dkt. 1). From April 1, 1994 through late 2002, the Court stayed this action pending the final adjudication of Peabody I (Dkt. 4). The Court also granted the parties' stipulation to extend the time for service of the complaint and summons until after a lift of the stay (Id.). However, the Navajo Nation has never served the complaint and summons on Peabody.

On appeal of Peabody I, the Ninth Circuit affirmed the Navajo Nation's authority to unilaterally assess PIT and BAT taxes on Peabody. See Peabody Coal Co. v. Navajo Nation, 75 F.3d 457, 461 (9th Cir. 1996). The Ninth Circuit also held that tax revenues paid to the Navajo Nation are coal "proceeds" and must be shared with the Hopi Tribe. See id. at 469. In July 2002, the Navajo Nation and the Hopi Tribe reached a settlement agreement in Peabody I. The Navajo Nation agreed to pay $8,077,424.90 to the Hopi Tribe for taxes collected on former joint use area-mined coal.

When this action resumed, the Court held two status hearings (Dkts. 5-13). At the latter hearing on September 8, 2003, the parties stipulated to a 90-day continuance in order to discuss possible settlement negotiations (Dkt. 13). In the meantime, Peabody and its successor in interest filed an answer and counterclaim (Dkts. 14-15). During a January 2004 status hearing, the Navajo Nation planned to explore options regarding settlement or a stay in the proceedings (Dkts. 16, 27-29). On February 27, 2004, however, Peabody moved for summary judgment regarding the validity of its Coal Leases with the Navajo Nation (Dkts. 33-34). Peabody sought relief because it believed that the Navajo Nation's claims threatened the continued operation of the MGS (Id.).

On March 18, 2004, Peabody reported that the Navajo Nation had moved the D.C. District Court to enjoin Peabody from prosecuting its counterclaim in this Court (Dkt. 40).

---

[2] Although this action began in 1993, the docket sheet reflects a minimal amount of substantive procedural matters. The Court summarizes those matters in this section.

- 4 -

1  The Navajo Nation then moved this Court to stay the adjudication of Peabody's
2  counterclaim, or in the alternative, transfer Peabody's counterclaim to the D.C. District
3  (Dkts. 45, 53). The Navajo Nation also moved for leave to file a first amended complaint
4  (Dkt. 44). The Navajo Nation desired to modify its complaint in light of the resolution of
5  Peabody I (Dkt. 166, 5:27-28). After the D.C. District Court denied the Navajo Nation's
6  motion to enjoin, the Navajo Nation withdrew its motion to stay or transfer in this Court
7  (Dkt. 58-60).

8       The Salt River Project Agricultural Improvement and Power District ("SRP") moved
9  to intervene in this action on April 30, 2004 (Dkts. 67, 71). SRP sought to defend against
10 any remaining challenge to the validity of the NGS Lease and its tax waiver (Dkt. 71). On
11 May 11, 2004, the Court ordered the parties to advise the Court of the progress made toward
12 global resolution (Dkt. 69). When the Court granted SRP's motion to intervene on May 28,
13 2004, SRP moved to dismiss the claims for equitable relief regarding the validity of the NGS
14 tax waivers for lack of subject matter jurisdiction (Dkts. 82, 87). On July 7, 2004, the Navajo
15 Nation moved to dismiss Peabody's counterclaim (Dkt. 111).

16      The Court held oral argument on Peabody's motion for summary judgment and took
17 it under advisement on July 12, 2004. Pursuant to the parties' stipulation, the Court stayed
18 the litigation on October 22, 2004 in order for the parties to pursue alternative dispute
19 resolution for a variety of disputes, not just this action (Dkt. 132). All of the disputes focused
20 on the continued operation of the MGS (Dkt. 144). The parties did not reach a resolution,
21 though, and the MGS permanently closed on December 31, 2005 (Id.). This also led to the
22 closure of Black Mesa Mine (Id.). As a result, the Navajo Nation is no longer collecting any
23 taxes from Peabody in connection with its mining operations (Dkt. 166, 6:15-17).

24      The Court continued the stay until it was dissolved by a motion of any party and/or
25 a court order (Dkt. 134). Therefore, the Court denied without prejudice as moot Peabody's
26 motion for summary judgment (Dkt. 33), the Navajo Nation's motion for leave to file a first
27 amended complaint (Dkt. 44), SRP's motion to dismiss the case (Dkt. 87), the Navajo
28

- 5 -

1  Nation's Fed. R. Civ. P. 56(f) motion for discovery (Dkt. 110), and the Navajo Nation's
2  motion to dismiss Peabody's counterclaim (Dkt. 111).  The Court denied these motions with
3  leave to re-file as necessary upon the dissolution of the stay (Dkt. 135, Order dated August
4  23, 2005).  From January 2006 to November 2007, the parties provided joint statements of
5  progress pursuant to a court order (Dkts. 136-145).
6        After Peabody filed a motion to lift the stay, the Court lifted the stay on January 17,
7  2008 (Dkts. 146-47).  The parties proposed a joint case management plan pursuant to Rule
8  26(f) (Dkt. 156).  On May 1, 2008, the Court held a Rule 16 scheduling conference and
9  adopted part of the parties' proposed case management plan (Dkt. 159).  The Court also
10 ordered the parties to meet and confer over a discovery schedule (Id.).  If the parties were
11 unable to stipulate to a discovery schedule, the Court would hold a hearing to set the
12 schedule dates (Id.).  On May 23, 2008, the Navajo Notion filed the Motion to Voluntarily
13 Dismiss (Dkt. 166).

## STANDARD OF REVIEW

15       A plaintiff may dismiss an action without a court order either by filing a notice of
16 dismissal before the defendant serves an answer or motion for summary judgment, or by a
17 stipulated dismissal.  Fed. R. Civ. P. 41(a)(1).  If a plaintiff no longer has the right to
18 voluntarily dismiss the action, Federal Rule of Civil Procedure 41(a)(2) allows a plaintiff to
19 dismiss the action only by court order, subject to any terms and conditions the court deems
20 proper.  See Fed. R. Civ. P. 41(a)(2); Stevedoring Servs. of Am. v. Armilla Int'l B.V., 889
21 F.2d 919, 921 (9th Cir. 1989); Westlands Water Dist. v. U.S., 100 F.3d 94, 96 (9th Cir.
22 1996).  Unless the court order states otherwise, a dismissal under Rule 41(a)(2) is without
23 prejudice.  Fed. R. Civ. P. 41(a)(2).  "A district court should grant a motion for voluntary
24 dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal
25 prejudice as a result."  Smith v. Lenches, 263 F.3d 972, 975 (9th Cir. 2001) (citing Waller
26 v. Fin. Corp. of Am., 828 F.2d 579, 583 (9th Cir. 1987); Hamilton v. Firestone Tire &
27 Rubber Co., Inc., 679 F.2d 143, 145-46 (9th Cir. 1982)).

"[L]egal prejudice is just that – prejudice to some legal interest, some legal claim, some legal argument. Uncertainty because a dispute remains unresolved is not legal prejudice." Westlands, 100 F.3d at 97; see also Smith, 263 F.3d at 976. "Also, plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal." Smith, 263 F.3d at 976 (citing Hamilton, 679 F.2d at 145). Whether to grant a motion for voluntary dismissal under Rule 41(a)(2) is within the "district court's sound discretion." Westlands, 100 F.3d at 96 (citing Stevedoring Servs., 889 F.2d at 921).

## DISCUSSION

The Navajo Nation seeks a court order allowing it to voluntarily dismiss without prejudice this action. Peabody objects to a voluntary dismissal without prejudice, and Peabody contends that either the dismissal should be with prejudice or its counterclaim should remain.

District courts in the Ninth Circuit have analyzed Rule 41(a)(2) motions in three stages: (1) whether to allow dismissal; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed. Williams v. Peralta Cmty. College Dist., 227 F.R.D. 538, 539 (N.D. Cal. 2005) (citing Burnette v. Godshall, 828 F.Supp. 1439, 1443 (N.D. Cal. 1993), aff'd sub nom, Burnette v. Lockheed Missiles & Space Co., 72 F.3d 766, 767 (9th Cir. 1995)). Due to the various issues raised by the parties, the Court finds this framework helpful and applies it to this matter.

I.      Whether to Allow Dismissal

District courts in the Ninth Circuit utilize a four factor test when deciding whether to grant a voluntary dismissal: (1) the defendant's effort and expense in preparing for trial, (2) any excessive delay or lack of diligence on the part of the plaintiff in prosecuting the action, (3) insufficiencies in the plaintiff's explanation of the need for a dismissal; and (4) the fact that a summary judgment motion has been filed by the defendant. United States v. Berg, 190 F.R.D. 539, 543 (E.D. Cal. 1999).

### A. The Four Factors

While the Navajo Nation analyzes voluntarily dismissal under this test, Peabody does not discuss any of these factors in its response. With regards to the second factor, although this case was filed in 1993, the Court does not find any excessive delay or lack of diligence on the part of the Navajo Nation in prosecuting this action. As noted, the Court stayed this case from 1994 to 2002 pending the final adjudication of Peabody I because of the tax issues related to this case. In 2003 and 2004, the Navajo Nation considered settlement negotiations. From October 22, 2004 through January 17, 2008, the Court stayed the litigation in order for the parties to pursue alternative dispute resolution. Throughout this time, the Navajo Nation has filed various motions, but the Court has not ruled upon any of them due to the stays in litigation. The delay in this case cannot be attributed to any one party over another, and the Navajo Nation has not lacked diligence in prosecuting this action.

As for the third factor, the Navajo Nation has sufficiently explained the need for a dismissal. The Navajo Nation seeks voluntary dismissal due to changed circumstances or mootness. The circumstances of this litigation have substantially changed since the Navajo Nation brought suit over fifteen years ago. The Navajo Nation filed this action in response to the Hopi Tribe tax issues that arose during earlier litigation (Dkt. 166, 4:16-22). The ruling and settlement in Peabody I resolved many of those issues and "mooted the Navajo Nation's need to challenge the validity of the NGS Tax waiver" (Id. at 11:10-12:3). The Navajo Nation has never attempted to tax Peabody's mining activities for the NGS. Then, the closing of the MGS and the Black Mesa Mine mooted the Navajo Nation's remaining claims (Id. at 12:4-20). As a result of these closures, the Navajo Nation no longer assesses any taxes on Peabody's mining operations. With no tax revenue, the Navajo Nation can now collect the full royalty revenue under the cap that it initially bargained for with Peabody, and thus any injury alleged in the Navajo Nation's complaint is no longer present (Id.). Thus, the Navajo Nation has sufficiently explained the need for a dismissal.

1    Analyzing the first and fourth factors together, the Court finds that these factors also
2 weigh in favor of dismissal. The district court can consider whether the defendant incurred
3 high litigation costs, engaged in discovery, commenced trial preparations, or filed any
4 motions challenging the merits of this case. Smith, 263 F.3d at 976. However, the Ninth
5 Circuit has explicitly stated that the expense incurred in defending against a lawsuit does not
6 amount to legal prejudice. Westlands, 100 F.3d at 97 (citing Hamilton, 679 F.2d at 146).
7 Here, the parties have not conducted any discovery or commenced trial preparations. Before
8 the parties conducted any discovery, Peabody filed a motion for summary judgment.
9 Although Peabody's motion was fully briefed and argued, the Court denied this motion as
10 moot when the parties agreed to stay the proceedings in October 2004 (Dkt. 135, Order dated
11 August 23, 2005). Thus far, Peabody has not shown that it incurred high litigation costs.
12 Peabody has not challenged any of the four factors, but instead focuses on its counterclaims
13 and legal prejudice. Given the factors weighing in favor of dismissal and Peabody's lack of
14 resistance to them, the Court will grant the Navajo Nation's voluntary dismissal.

15    B.    Whether Peabody's Counterclaim Can Remain

16    Under Rule 41(a)(2), if a defendant counterclaimed before the plaintiff moved to
17 dismiss, the court can dismiss plaintiff's claims over the defendant's objection, but only if
18 the defendant's counterclaim can remain pending for independent adjudication. See Fed. R.
19 Civ. P. 41(a)(2). Peabody contends that its counterclaim should remain because it can be
20 independently adjudicated. Peabody further contends that if the Court dismisses its
21 counterclaim, then it will suffer plain legal prejudice.

22    On the other hand, the Navajo Nation characterizes Peabody's counterclaim as, in fact,
23 affirmative defenses (Dkt. 166, 15:7-9). Even if Peabody asserted a proper counterclaim, the
24 Navajo Nation argues that this Court lacks jurisdiction over it for two reasons: (1) the
25 Navajo Nation's status as a sovereign nation prevents Peabody from bringing its broad
26 counterclaim before this Court, and (2) Peabody's counterclaim no longer constitutes a
27 justiciable controversy (Id. at 19:23-27). Therefore, the Navajo Nation contends that

28

Peabody's counterclaim cannot be independently adjudicated. Furthermore, the Navajo Nation alleges that Peabody's true motivation to maintain its counterclaim is "to enjoin the D.C. Action altogether or improperly engender a battle between two federal courts" (Id. at 28:3-4).

In Peabody's Answer and Counterclaim, Peabody asserted fifteen affirmative defenses to the Navajo Nation's claim (Dkt. 14). Additionally, Peabody asserted a counterclaim for declaratory relief (Id.). According to Peabody, "Peabody's counterclaim seeks no more than the opposite of the relief that the Navajo Nation seeks – a declaration that the 1987 Lease Amendments are *not* voidable . . ." (Dkt. 168, 14:22-24) (emphasis in original).[3]

The Declaratory Judgment Act enabled the courts to declare the rights and other legal relations of any interested party seeking such a declaration. 28 U.S.C. § 2201(a). Declaratory relief may be sought to resolve disputes regarding the validity of a contract or the meaning of disputed terms in a contract. A party seeking declaratory relief must show: (1) an actual controversy and (2) a matter within federal court subject matter jurisdiction. 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . ."); see Calderon v. Ashmus, 523 U.S. 740, 745 (1998). Although the Declaratory Judgment Act created a federal remedy, it is not an independent basis for federal jurisdiction. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). Even if a party meets these two requirements, the court still has discretion to decline to entertain the action.

The Declaratory Judgment Act states that the court *may* declare rights. 28 U.S.C. § 2201. Therefore, while the Act authorizes the court to provide declaratory relief, the court is not required to do so. Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942).

---

[3] Originally, Peabody's counterclaim also sought injunctive relief. As Peabody stated in the Rule 26(f) Joint Case Management Plan and in its response to this voluntary dismissal motion, "Peabody does not intend to pursue the claims for injunctive relief and has agreed with the Navajo Nation and SRP not to seek relief with respect to the NGS Plant Site Lease" (Dkt. 156; Dkt. 166, 12:9-10).

1  The court may exercise its sound discretion to dismiss an action seeking a declaratory
2  judgment. Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). "In the declaratory
3  judgment context, the normal principle that federal courts should adjudicate claims within
4  their jurisdiction yields to *considerations of practicality and wise judicial administration*."
5  Id. (emphasis added). The Supreme Court and the Ninth Circuit have announced factors and
6  considerations to guide the district court's discretion. See Principal Life Ins. Co. v.
7  Robinson, 394 F.3d 665, 672 (9th Cir. 2005) (discussing the non-exclusive Brillhart factors
8  and additional relevant considerations such as the action's useful purpose, procedural
9  fencing, and the availability of other remedies). "Essentially, the district court 'must balance
10 concerns of judicial administration, comity, and fairness to the litigants.'" Id. (citing Am.
11 States Ins. Co. v. Kearns, 15 F.3d 142, 144 (9th Cir. 1994) (quotation omitted)). There is no
12 presumption in favor of abstaining from, nor is there a presumption in favor of retaining
13 jurisdiction. See Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998)
14 (en banc); Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 803 (9th Cir. 2002). The
15 court considers whether to dismiss an action seeking declaratory relief under the
16 circumstances existing at the time the issue is raised rather than at the time the action was
17 filed. American Cas. Co. of Reading, Penn. v. Krieger, 181 F.3d 1113, 1119 (9th Cir. 1999).
18     The Navajo Nation may have valid arguments that Peabody's counterclaim is no
19 longer an actual controversy or a matter within federal court subject matter jurisdiction.
20 However, the Court need not address those issues. Rather, because declaratory relief is
21 discretionary, the Court declines to hear Peabody's counterclaim for declaratory relief.
22 Peabody simply "seeks the relief that would attend the rejection of the Navajo Nation's own
23 claims here . . . a declaration that the 1987 Lease Amendments are *not* voidable . . ." (Dkt.
24 168, 14:10-11, 22-24) (emphasis in original). The Declaratory Judgment Act authorizes the
25 Court to provide Peabody with the declaration it seeks, but the Court is not required to do so.
26 See Brillhart, 316 U.S. at 494. As declaratory relief actions are discretionary, Peabody's
27 counterclaim has no grounds for independent adjudication. See Fed. R. Civ. P. 41(a)(2).
28

- 11 -

Moreover, Peabody has brought the same counterclaim in the D.C. District. Although much of the precedent regarding declaratory relief addressed situations when there is a pending state court action, the same considerations of "judicial administration, comity, and fairness to the litigants" should be present when there is another pending federal action. See Principal Life, 394 F.3d at 672 (citing Am. States Ins. Co. v. Kearns, 15 F.3d 142, 144 (9th Cir. 1994)). Peabody filed its counterclaim in the D.C. District action two years before it filed a counterclaim in this Court. The Navajo Nation alleges that "the D.C. Counterclaim requests broad equitable relief in connection with the 1987 and 1998 Lease Amendments and contains all of the factual and legal claims presented in [this] Counterclaim" (Dkt. 166, 14:27-15:1). While the D.C. District action has been moving forward, Peabody's counterclaim in this action has not advanced procedurally to the point that declining jurisdiction would be a waste of judicial resources. See Principal Life, 394 F.3d at 672. Therefore, the Court yields to considerations of practicality and wise judicial administration by declining to hear Peabody's counterclaim. See Wilton, 515 U.S. at 288. For all of these reasons, the Court exercises it discretion to abstain from hearing Peabody's declaratory relief action.

C. Other Plain Legal Prejudice

Finally, Peabody contests a dismissal because it contends that the Navajo Nation has engaged in forum shopping. Peabody alleges that the Navajo Nation has retained its sovereign immunity and a right to a jury trial in the D.C. District action, but waived those rights in this Court. Under Russ v. Standard Insurance Co., 120 F.3d 988, 990 (9th Cir. 1997), Peabody asserts that the Navajo Nation cannot revive its right to a jury trial by seeking a dismissal without prejudice (Dkt. 168, 29:14-20). In this action, the Navajo Nation sought declaratory and equitable relief stemming from the tax provisions in a contract. By only seeking declaratory and limited equitable relief in this action, the Navajo Nation "chose not to request a jury trial" (Dkt. 173, 13:27-28), and it would not have been entitled to one. Thus, it cannot "revive" its right to a jury trial by bringing this particular action in another forum. Furthermore, the Navajo Nation does not seek to dismiss this claim in order to bring

the exact same claim in another forum. Rather, the Navajo Nation brought suit in the D.C. District under different theories, and the D.C. District action has been ongoing. In the D.C. District suit, the Navajo Nation claims that Peabody and SCE[4] conspired to improperly influence the federal government's decisions regarding the coal leases:

> [The Navajo Nation] alleges a violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and related claims such as breach of contract, interference with fiduciary relationship, conspiracy and fraudulent concealment. The core of the complaint is the revelation stemming from discovery received in the Court of Federal Claims case that defendants hired a lobbyist, Stanley Hulett, who met with Secretary Hodel *ex parte* and allegedly persuaded him not to approve a recommendation by the area director to raise the royalty rate to 20%.

Navajo Nation v. Peabody Holding Co., Inc., 209 F. Supp. 2d 269, 272 (D.D.C. 2002). The Navajo Nation filed an action in the D.C. District because the alleged breaches of trust occurred in Washington, D.C. by the Secretary of the Interior (Dkt. 166, 7:2-5). Although both of the Navajo Nation's actions reference the 1987 Lease Amendments, the Navajo Nation's claims involve different events and theories for relief. Therefore, the Court does not find that the Navajo Nation has engaged in forum shopping. Even if the Navajo Nation is trying to forum shop, "plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal." Smith, 263 F.3d at 976 (citing Hamilton, 679 F.2d at 145). As Peabody will suffer no plain legal prejudice, the Court will dismiss this action.

II.     Whether the Dismissal Should Be With or Without Prejudice

At different points in their briefing, the parties agree that this case can be dismissed. However, they disagree over whether it should be dismissed with or without prejudice (Dkt. 168, 1:22, 27:23; Dkt. 166, 16:4-17:14). Naturally, Peabody desires a dismissal with prejudice while the Navajo Nation seeks a dismissal without prejudice.

---

[4] The Court dismissed SRP from the D.C. District action.

- 13 -

1    When a court order does not state whether a dismissal is with or without prejudice,
2 the dismissal is construed as without prejudice. Fed. R. Civ. P. 41(a)(2). Rule 41's "broad
3 grant of discretion does not contain a preference for one kind of dismissal or another." See
4 Hargis v. Foster, 312 F.3d 404, 407 (9th Cir. 2002). The "default position [of without
5 prejudice] applies to the interpretation of a silent order, not to the district court's
6 discretionary decision in the first instance." Id. (citing Semtek Int'l v. Lockheed Martin
7 Corp., 531 U.S. 497, 503 (2001); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice
8 and Procedure § 2367 (2d ed. 1994)).

9    Above all, the Court finds that staleness has taken over this case. This staleness leads
10 the Court to dismiss this action with prejudice. In any further action on these claims, both
11 parties will undoubtedly experience serious evidentiary issues due to the passage of time.
12 The parties themselves have stayed this case numerous times. Every time the Court has been
13 ready to rule upon matters, the parties stayed this case. The Court has given the parties
14 ample opportunities to settle, pursue alternative means, or pursue this litigation.
15 Furthermore, a dismissal with prejudice prevents Peabody from suffering plain legal
16 prejudice due to the staleness of this case. See Smith, 263 F.3d at 976 ("That the district
17 court here dismissed, with prejudice, the federal claims so they cannot be reasserted in
18 another federal suit only strengthens our conclusion that the dismissal caused no legal
19 prejudice [to defendant] and was not an abuse of discretion."). Additionally, as noted, the
20 entire premise of the Navajo Nation's claim has factually and legally changed. In light of
21 all of these considerations, the Court dismisses this action with prejudice.

22    Interestingly, although the Navajo Nation vigorously advocates against a dismissal
23 with prejudice, it also claims that it will not refile another claim for this matter. The Navajo
24 Nation "seeks to permanently dismiss a case that no longer presents a controversy or a
25 prospective injury" (Dkt. 166, 14:19-20). The Navajo Nation reiterates, "[t]o be clear, the
26 Navajo Nation is making this request to dismiss *not* because it wishes to refile its case in
27 another court or because a key issue was decided in favor of the defendant on a dispositive

1 motion . . ." (Id. at 17:6-9) (emphasis in original). If the Navajo Nation will not refile
2 another case, as it so strongly emphasizes, the Court wonders why it did not stipulate to a
3 dismissal with prejudice. The Navajo Nation's unwillingness to stipulate to a dismissal with
4 prejudice apparently stems from a fear that the Court will impose terms and conditions, such
5 as costs and attorneys' fees, on the voluntary dismissal. In a footnote, the Navajo Nation
6 warns that if the Court dismisses with prejudice or imposes other undesirable conditions, then
7 the Navajo Nation will refuse the voluntary dismissal by withdrawing its motion (Id. at 17
8 n. 6). However, the Navajo Nation concedes that the permanent closure of the MGS,
9 settlement of Peabody I, and the absence of any dispute relating to the NGS tax waiver render
10 its claims moot in this proceeding (Id. at 2:2-5). If the Navajo Nation pursues this action, the
11 Court cannot exercise jurisdiction if no actual controversy exists. Furthermore, the Court can
12 decline to hear the Navajo Nation's claim for discretionary, declaratory relief. Therefore, the
13 Navajo Nation will not suffer any prejudice by this Court's dismissal with prejudice.
14 Furthermore, neither party is without a remedy because if either party breaches the Coal
15 Leases or Amendments, then the other party can bring a suit for breach of contract. The
16 Court will address any terms and conditions in the next section. This action is dismissed with
17 prejudice.

18 III.     What Terms and Conditions, If Any, Should Be Imposed

19         The Navajo Nation does not want the Court to impose any terms or conditions on the
20 dismissal. In contrast, if the Court dismissed this action without prejudice and did not allow
21 Peabody's counterclaim to remain, then Peabody requested attorneys' fees and expenses for
22 this action (Dkt. 168, 27 n. 7). As the Court has dismissed this action with prejudice,
23 Peabody apparently did not request attorneys' fees and expenses.

24         The court is not required to impose costs and fees as a condition for dismissing
25 without prejudice. Stevedoring Servs., 889 F.2d at 921. The district court may properly
26 deny costs and attorney fees if it justifies its choice by a consideration of legitimate factors,
27 such as Plaintiff's realistic chance of prevailing on its theory of liability. Id. at 922. If the

1  district court decides to award costs and attorney fees as conditions, the defendants should
2  only be awarded costs and fees for work performed prior to the motion for voluntary
3  dismissal, and then only for work that cannot be useful in continuing litigation between the
4  parties.  Koch v. Hankins, 8 F.3d 650, 652 (9th Cir. 1993); Davis v. USX Corp., 819 F.2d
5  1270, 1276 (9th Cir. 1987); Westlands, 100 F.3d at 97-98.  Furthermore, the determination
6  made by the court in this action does not preclude the assessment of costs in any future
7  litigation.  See Fed. R. Civ. P. 41(d).  Under Rule 41(d), if a plaintiff who previously
8  dismissed an action in any court files an action based on or including the same claim against
9  the same defendant, the court may order the plaintiff to pay all or part of the costs of that
10 previous action.  Id.

11          Circumstances have changed the Navajo Nation's position in this action.  At the time
12 the Navajo Nation filed its complaint, though, it pursued this action with a realistic chance
13 of prevailing.  See Stevedoring Servs., 889 F.2d at 922.  The Court has stayed this action
14 several times due to other litigation, or in order for the parties to pursue settlement and
15 alternative methods of dispute resolution.  As noted, Peabody has not incurred any excessive
16 costs for this litigation, and even if it did, those costs are not grounds for plain legal
17 prejudice.  Moreover, the Court can only award costs and attorneys' fees for work that cannot
18 be useful in continuing litigation between the parties.  Koch, 8 F.3d at 652; Davis, 819 F.2d
19 at 1276; Westlands, 100 F.3d at 97-98.  The Navajo Nation alleges that Peabody's
20 counterclaim is the same as its counterclaim in the ongoing D.C. District action (Dkt. 166,
21 19:1-3).  As a practical matter, the Court cannot determine what portion of attorneys' fees
22 for work in this action cannot be useful in continuing litigation between the parties.  Finally,
23 if the Navajo Nation withdraws its voluntary dismissal and brings another action based on
24 this action, the Court can order the Navajo Nation to pay all or part of the costs of this action.
25 See Fed. R. Civ. P. 41(d).  For all of these reasons, the Court will not condition the dismissal.
26 ///
27 ///
28

- 16 -

In light of the reasons above,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Voluntarily Dismiss (Dkt. 166) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that the above-captioned action is **DISMISSED WITH PREJUDICE**, each party to bear its own costs and fees, including attorneys' fees.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this matter.

DATED this 25th day of March, 2009.

Stephen M. McNamee
United States District Judge